### AMERICAN MUNICIPAL POWER–OHIO, INC., Petitioner,

v.

### FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

### Cincinnati Gas & Electric Company, Intervenor.

### No. 87–1269.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1988.

Decided Dec. 9, 1988.

David R. Straus, with whom Margaret A. McGoldrick, Washington, D.C., was on the brief, for petitioner.

Timm L. Abendroth, Atty., F.E.R.C., with whom Catherine C. Cook, Gen. Counsel, and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent.

Michael A. Gribler, Robert S. Waters, Richard M. Merriman, and William M. Dudley, Washington, D.C., were on the brief for intervenor the Cincinnati Gas and Elec. Co.

Before EDWARDS, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the Court filed PER CURIAM.

---

PER CURIAM:

American Municipal Power–Ohio, Inc. ("AMP") petitions us to remand to the Federal Energy Regulatory Commission ("FERC" or "the Commission") an order approving new charges by the Cincinnati Gas & Electric Company ("CG & E"). AMP claims FERC arbitrarily and capriciously approved the rate change without justifying its decision and improperly refused to conduct a hearing on disputed material facts. Because FERC has failed to provide us with adequate reasoning supporting its decision, we grant the petition for review and remand this matter to FERC so that it may provide a reasoned explanation of its resolution of this controversy.

## I. BACKGROUND

AMP buys electricity for member Ohio municipal electric utilities, including members within the territory of Dayton Power & Light ("DP & L"). (DP & L is not a party in this court.) In form, the AMP–CG & E–DP & L transactions involved two sales that passed through acquisition costs and transmission costs to the ultimate municipal customer. AMP located power; CG & E bought the power and resold to DP & L; and DP & L delivered it to the AMP member. Beyond its acquisition costs, CG & E charged only a one-mill-per-kilowatt-hour ("1–mill") charge, called an "adder," that was passed through by DP & L. The transactions between CG & E and DP & L are governed by an interconnection agreement between them. AMP is not a party to the interconnection agreement but the transactions between DP & L and AMP–Ohio are pursuant to a separate bilateral agreement.

The interconnection agreement is filed as a rate schedule with FERC. In December 1986 CG & E and DP & L filed an amendment to their interconnection agreement that retained the 1–mill adder and added a new "demand charge" of $0.35 per kilowatt hour per week of reserved "Third Party Weekly Short Term Power." There were separate provisions for daily short-term power, but none for longer-term (such as monthly) "short-term" power. (AMP alleges it scheduled its deliveries under the prior arrangement several days in advance of each month end for the entire following month.) The demand charge is described by CG & E as being intended to reflect CG & E's average costs of owning and operating its transmission facilities. CG & E provided cost-justification documentation for the demand charge, but, under color of prior Commission precedent, made no attempt to cost-justify the 1–mill adder.

The pertinent agency precedents are Order No. 84, 18 C.F.R. § 35.23 (1988), and two cases interpreting it, *Allegheny Power System*, 17 F.E.R.C. ¶ 61,152 (1981), and *Commonwealth Edison Co.*, 35 F.E.R.C. ¶ 61,352 (1986). Order No. 84 provides that where a utility uses a rate component computed in whole or part as a percentage of the purchased power price, the utility must justify that component on the basis of costs not otherwise recovered. 18 C.F.R. § 35.23. It excepts, however, rates not in excess of one mill. *Id.* at § 35.23(e). In *Allegheny Power*, FERC clarified that Order No. 84 does not require a utility to elect between the 1–mill adder exception and full cost-justification, and permitted use of a 1–mill adder in conjunction with a cost-justified 2–mill demand charge to cover transmission costs and a separate charge to cover transmission losses. 17 F.E.R.C. ¶ 61,152, at 61,301. In *Commonwealth Edison*, FERC ruled that the 1–mill adder exception was "appropriate only for short-term arrangements where costs may be uncertain," 35 F.E.R.C. ¶ 61,352, at 61,810 (footnote omitted), and denied its use when the costs it was intended to cover—for "requirements transmission service"—were not difficult to quantify, but simply had not been quantified. *Id.*

AMP intervened in the FERC proceeding, protesting in general that CG & E's new rates were unjust and in particular that CG & E had not cost-justified the demand and 1–mill energy rates, either separately or in combination. FERC tersely rejected AMP's objection that CG & E's use of both the demand charge and the 1–mill adder permitted double recovery, citing its

*Allegheny Power* interpretation of Order No. 84. *Cincinnati Gas & Electric Co.*, 38 F.E.R.C. ¶ 61,163, at 61,448 (1987). AMP requested rehearing, arguing that *Allegheny Power* wrongly interpreted Order No. 84 as permitting both the 1–mill adder and separately cost-justified charges, or alternatively, that *Commonwealth Edison* was the controlling precedent, under which the 1–mill adder was inapplicable to what AMP described as its firm, longer-term monthly use occasioning few, if any, unquantifiable costs to CG & E. FERC denied rehearing without comment. *Cincinnati Gas & Electric Co.*, 39 F.E.R.C. ¶ 61,083 (1987).

AMP again sought reconsideration in light of the then-recent case *Wisconsin Power & Light Co.*, 40 F.E.R.C. ¶ 61,316 (1987), in which, as in *Commonwealth Edison,* the Commission had summarily rejected a proposed 1–mill transmission adder in the context of long-term firm power transactions. *Id.* at 61,975. In *Wisconsin Power,* the utility had developed a basic demand charge from a cost study that fully identified and quantified costs. Relying on *Commonwealth Edison,* the Commission found that allowing the adder as well would permit the utility to collect revenues improperly in excess of its costs. *Id.* FERC denied reconsideration, stating that the Order No. 84 1–mill rule applied because "the interruptible and short-term nature of the transmission service to be provided makes cost justification difficult to quantify or expensive to quantify." *Cincinnati Gas & Electric Co.*, 41 F.E.R.C. ¶ 61,264, at 61,678 (1987). FERC distinguished *Commonwealth Edison* and *Wisconsin Power* as involving firm, long-term transmission arrangements and costs that could have been quantified but were not. *Id.* FERC implicitly assumed that CG & E has non-quantifiable costs and CG & E's service is not firm, long-term transmission service.

AMP urges that despite the short-term interruptible label placed on the power service by FERC, the power is in fact more like the firm, long-term arrangements construed in *Commonwealth Edison* and *Wisconsin Power* than the short-term interruptible involved in *Allegheny Power* and cov-ered by Order No. 84. (AMP does not concede the correctness of the *Allegheny Power* decision, but argues that if it is correctly decided it is still not controlling because of the distinction in the nature of the power set forth above.)

## II. ANALYSIS

 At the outset we note that FERC raises objection to the standing of AMP to bring this petition. FERC argues that AMP has ceased using the CG & E–DP & L transmission upon the effectiveness of the rate change and, therefore, is not adversely affected. AMP counters that it would use the transmission had the rate not been increased and that it is now relegated to buying power at a higher rate than the pre-change CG & E–DP & L transmissions. FERC says there is no evidence of this. FERC's call for evidence rings hollow in view of its denial of a hearing on AMP's challenge. Since it seems highly unlikely that AMP found in the market power cheaper than that which it had previously been buying and since AMP's filings below and in this court reflect a financial injury, we find FERC's standing argument to be without merit and reject its motion to dismiss. *Cf. General Motors Corp. v. FERC,* 656 F.2d 791, 795 n. 9 (D.C.Cir.1981) (rejecting Commission's arguments that petitioner lacked standing).

 Once the standing hurdle is cleared, FERC's defense of its handling of this matter below warrants little discussion. It seems plain that either the reasoning of *Allegheny Power* applying the Order No. 84 exception or *Commonwealth Edison* finding it inapplicable must govern. FERC may well be correct that the former rather than the latter parallels the facts of this petition and controls the result. The problem is FERC has not told petitioner why, nor can we discern an answer from the record. Counsel for FERC has eloquently argued to us apparently meaningful distinctions between this case and *Wisconsin Power* and *Commonwealth Edison.* Unfortunately, FERC did not set those out below. We remind the Commission once

again that " '[T]he court's review must not merely rubberstamp the agency's decision. The agency must make clear the "basic data and the whys and wherefores" of its conclusions.' ... [The court] 'must not be left to guess as to the agency's findings or reasons.' " *City of Vernon v. FERC*, 845 F.2d 1042, 1048 (D.C.Cir.1988) (citations omitted).

Counsel's argument to us cannot substitute. "[A]n agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.' " *FPC v. Texaco Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). Even under the most deferential application of the arbitrary and capricious standard mandated by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1982), we cannot uphold the agency's decision "on the same basis articulated" where the agency's decision articulates none. *See Harborlite Corp. v. ICC*, 613 F.2d 1088, 1092–93 (D.C.Cir.1979).

We therefore remand this matter to the Commission not because its decision is wrong or even because the decision is, in and of itself, arbitrary and capricious; but because the sparse record provided by the Commission renders us unable to discern one way or the other. As in *City of Vernon*, 845 F.2d at 1049, FERC "has failed to provide us with adequate reasoning to support its decision." *Id.* We therefore grant this petition and remand to FERC so that it may provide a reasoned explanation of its resolution of this case.

*It is so ordered.*